UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EL CAMINO RESOURCES, LTD., et al.   )
                                    )
          Plaintiffs,               )     Case No. 1:07-cv-598
                                    )
v.                                  )     Honorable Janet T. Neff
                                    )
HUNTINGTON NATIONAL BANK,           )
                                    )     **MEMORANDUM OPINION**
          Defendant.                )
_____)

This is a diversity action brought by two creditors of the now defunct Cyberco Holdings, Inc. The complaint alleges that defendant Huntington National Bank, Cyberco's principal lender, aided and abetted Cyberco in fraudulent conduct, leading to multi-million dollar losses to plaintiffs. The case is now in an extended discovery period, which the court approved in light of the unusual complexity of this case.

Presently pending before the court is plaintiffs' motion to compel the deposition of Thomas Hoaglin, Chief Executive Officer of Huntington National Bank. Defendant opposes the motion, asserting that Hoaglin has no firsthand knowledge of the facts underlying this case, is not listed by any party in its Rule 26 disclosures as a person with knowledge of material facts, and will not be called as a defense witness. Defendant has submitted an affidavit from Mr. Hoaglin, indicating that he does not recall any discussion or other communications with anyone at the bank about Cyberco during the relevant period and does not remember what, if anything, he knew about this customer of the bank. The affidavit further indicates that Mr. Hoaglin did not communicate with

Cyberco or any of its officers, did not give any instructions to anyone at the bank concerning how to handle this account and only has knowledge of the case on the basis of briefings from counsel. Plaintiff, by contrast, asserts that Hoaglin has "personal knowledge of the relationship" between Cyberco and defendant, on the basis of excerpts from the depositions of Larry Hoover and Michael Cross, bank officers who were directly involved in handling the Cyberco account.

        The management of discovery is committed to the trial court's discretion. *S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008). Except for a narrow range of discovery issues, such as those involving privileges or work-product immunity, most discovery disputes are resolved by balancing the relevance, importance, and need for the discovery on one hand against the burden, expense, and possibility of waste of time and effort on the other. *See* FED. R. CIV. P. 26(b)(2)(C). The lower federal courts have frequently applied such a balancing approach to situations in which a party seeks to depose a high-level corporate executive of the opposing party who was not directly involved in the transactions at issue. The need for judicial scrutiny arises from the "tremendous potential for abuse or harassment" possible in such situations. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 WL 205067, at * 3 (N.D. Cal. Jan. 25, 2007). Where a party seeks to depose an executive officer who appears only remotely connected to the case, the court generally requires a specific showing that the proposed deponent has unique personal knowledge such that the balance of factors weighs in favor of allowing a deposition to proceed. A Judge of the Eastern District has recently summarized the rule as follows:

> "When a party seeks to depose high-level decision makers who are removed from the daily subjects at issue in the litigation, the party must first demonstrate that the proposed deponent has 'unique personal knowledge' of facts relevant to the dispute." *Devlin v. Chemed Corp.*, 2005 WL 2313859 (E.D. Mich. 2005) (citing

> *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991); *Thomas v. International Business Machines*, 48 F.3d 478, 483-84 (10th Cir. 1995)).
>
> "In the absence of a showing of unique personal knowledge, the circuit courts, including the Sixth Circuit have upheld the entry of a protective order precluding the depositions of high level company executives." *Devlin, supra*, at * 2; *see also Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (upholding denial of plaintiff's request to depose high-ranking officer where there was no showing that individual was involved in the termination at issue); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (upholding district court's exercise of discretion in granting protective order barring plaintiffs from deposing their employer's chief executive officer, who lacked personal knowledge of relevant facts).

*Marsico v. Sears Holding*, No. 06-10235, 2007 WL 1006168, at * 2 (E.D. Mich. Mar. 29, 2007). The Sixth Circuit has indicated that in determining whether it is likely that the executive officer has discoverable knowledge, the trial court may rely upon the officer's affidavit. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991).

The court has carefully reviewed the deposition excerpts and other documentation provided by plaintiffs in support of their contention that Mr. Hoaglin has personal knowledge of the relationship between Cyberco and the bank. The first excerpt comes from the deposition of Larry Hoover, the Executive Vice-President responsible for Huntington's credit activities. Mr. Hoover testified that Hoaglin would have been made aware of the Cyberco situation "at an executive summary level" and that he would have been told of the collection progress being made at monthly risk management committee meetings. At one point, Mr. Hoover testified that Hoaglin likely was not advised of the situation until after the debt was repaid and the FBI report was issued. He was reminded by an exhibit (Plf. Ex. 489), however, that shortly before the final payout the Cyberco situation was discussed at a committee meeting. At best, Hoover's testimony indicates that Hoaglin was made aware of the problems with this account at routine meetings devoted to a summary of

major work-out situations. The testimony of Larry Cross, Huntington's Senior Vice-President, is even more tenuous. He testified only that it was possible that he spoke to Hoaglin about Cyberco in a group setting.

When defendant objected to the Hoaglin deposition in its responsive brief, plaintiff sought and was granted leave to file a reply brief. The reply brief relies on a document produced in discovery after plaintiffs filed their original motion. The document is an e-mail dated October 29, 2004, from James Dunlap, the Bank's Regional President for West Michigan, to Ron Baldwin, the Vice-Chairman, and Mr. Hoaglin. The reason for the e-mail was to announce that Cyberco had paid off its debt to the Bank in full. It contains this sentence, "Thanks for your help and support as we worked through this situation." Plaintiffs contend that this document establishes the requisite "unique knowledge" necessary to justify taking Hoaglin's deposition.

Plaintiffs' reliance on the October 29, 2004 e-mail is not persuasive. Far from showing "unique knowledge," the e-mail supports the same conclusion established by the deposition testimony: as CEO of a multi-state bank, Mr. Hoaglin was kept generally aware of problem accounts, such as Cyberco, by his subordinates, but knows nothing outside of that which he was told by them. The line of cases dealing with highly-placed executives presupposes that persons in that position will have some knowledge of most corporate affairs, but that they will rarely be involved in substantive decision-making. Therefore, those subordinate officers with substantive knowledge are fair game for discovery, but CEOs, if only remotely involved, are not. It is therefore insufficient to show that a CEO has "some" knowledge -- that much is presumed. Rather, plaintiffs must show "unique knowledge." A brief e-mail thanking the CEO for his "support" falls far short of this

standard.[1]  One would expect that corporate records would disclose many more references to Hoaglin, had he played any substantive role in the Cyberco matter.  The production of electronically stored corporate records in this case has been massive.  Plaintiffs' inability to point to anything more substantive than the October 24, 2004 e-mail demonstrates rather clearly that Mr. Hoaglin was not directly involved and has no unique knowledge of the facts relevant to this case.[2]

The evidentiary material now before the court indicates that, at most, the CEO of the bank was only vaguely aware of the Cyberco situation, as a result of briefings by subordinate officers.  These briefings were in the larger context of reporting to the CEO on the universe of troubled loans involving large sums of money.  There is no indication that Mr. Hoaglin made any decision concerning the Cyberco account or the bank's efforts to recover amounts due from that customer.  Any "personal knowledge" of Mr. Hoaglin was the result of briefings by these officers, all of whom have now been deposed extensively.  No evidence indicates that Hoaglin had any direct communication with Cyberco or that he directed any action regarding this customer.

The court finds that the proposed witness, Thomas Hoaglin, has no unique personal knowledge of facts relevant to this case and that the information sought is readily available from other bank officers who were actively involved in the Cyberco account.  In these circumstances, the balance of factors made relevant by Rule 26(b)(2)(C) militates against allowing the deposition of Mr. Hoaglin, especially at this late date in the life of this case.  In these circumstances, it is not necessary

---

[1] Furthermore, the e-mail comes at the tail-end of the string of events leading up to this lawsuit.  Within less than a month, the Cyberco scheme collapsed.

[2] Plaintiffs assert that they are clearly entitled to explore the nature of Hoaglin's "support" for the Bank's collection activities.  They do not explain why this is even remotely relevant or helpful to their case.  It would be astounding if the Bank's CEO did not "support" efforts to collect a $17 million debt.

to address defendant's alternative argument based on limitations in the amended case management order.

        Plaintiff's motion to compel the Hoaglin deposition will therefore be denied.


Dated:  November 5, 2008                 /s/  Joseph G. Scoville
                                                United States Magistrate Judge