UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EL CAMINO RESOURCES, LTD., et al.          )
                                           )
                     Plaintiffs,           )          Case No. 1:07-cv-598
                                           )
v.                                         )          Honorable Janet T. Neff
                                           )
HUNTINGTON NATIONAL BANK,                  )
                                           )
                     Defendant.            )
_____)

## REPORT AND RECOMMENDATION ON COSTS

This was a diversity case alleging business tort claims under Michigan law.  On July 1, 2010, District Judge Janet T. Neff entered a summary judgment in favor of defendant on all but one claim.  The remaining claim was the subject of protracted litigation, until it was dismissed on February 6, 2012, in response to an order of the bankruptcy court.  (docket # 638).  The dismissal of the sole remaining claim rendered the preceding summary judgment final.  Plaintiffs have filed a notice of appeal, and defendant has filed a bill of costs (docket # 640) seeking $198,090.60 in taxable costs.  The bill of costs is supported by the declaration of Matthew Nelson (docket # 641-4), as well as itemization of the detailed charges making up each line item (Appendices A through G, docket #s 640, 641) and copies of invoices (docket #s 641-643).  As allowed by W.D. Mich. LCivR 54.1, plaintiffs filed a motion to disallow all but $32,291.15 of the claimed taxable costs.  (docket # 644).  Defendant has filed a responsive brief, revising the total costs claimed down to $173,710.53.  (The total claim reflected on defendant's Exhibit A ($173,450.54) reflects an addition error.)

(docket # 648-1, Ex. A, ID# 9188).  Judge Neff has referred plaintiffs' motion to disallow costs to

me for issuance of a report and recommendation.  *See McCombs v. Meijer, Inc.*, 395 F.3d 346, 360

(6th Cir. 2005) (magistrate judge may issue report and recommendation on costs, subject to *de novo*

review); *see also Fharmacy Records v. Nassar*, Nos. 10-1354, 10-2073, 2012 WL 573942, at * 5

(6th Cir. Feb. 23, 2012) (referral of post-judgment costs to magistrate judge falls under 28 U.S.C.

§ 636(b)(3)).

        After review of the submissions of the parties, I conclude that oral argument would

not be helpful.  *See* W.D. MICH. LCIVR 7.2(d).  For the reasons set forth below, I conclude that

plaintiff's motion to disallow costs should be granted in part and denied in part.

## Discussion

### I.    General Principles

        Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs "should be

allowed to the prevailing party," unless a statute, rule or court order otherwise directs.  The language

of Rule 54(d)(1) "creates a presumption in favor of awarding costs, but allows denial of costs at the

discretion of the trial court."  *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728,

730 (6th Cir. 1986); *see Knology, Inc. v. Insight Commc'ns Co.*, 460 F.3d 722, 726 (6th Cir. 2006).

Because the rule prescribes a course of action as the norm but allows the district court to deviate

from it, the court's discretion is more limited than it would be if the rule were nondirective.

*Goosetree v. Tennessee*, 96 F.2d 854, 863 (6th Cir. 1986).  It is therefore incumbent upon the

unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award

of costs to the prevailing party. *White & White, Inc.*, 786 F.2d at 732. In the present case, plaintiffs have not advanced any reason why the court, in its discretion, should deny an award of costs.

Taxable costs are governed by chapter 123 of the Federal Judicial Code, 28 U.S.C. §§ 1911-1929. Items of taxable costs are enumerated in 28 U.S.C. § 1920. The court is limited to taxing costs that fall within those enumerated in § 1920, and has no discretion to exceed the four corners of the statute. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 417 (6th Cir. 2005). With regard to allowing or disallowing any particular cost item listed in section 1920, the court has "broad discretion." 405 F.3d at 419. The principal issues are whether the claimed items are allowable by law and whether they were necessarily incurred and reasonable in amount. *BDT*, 405 F.3d at 417. Although Rule 54(d)(1) contemplates that the Clerk will first tax costs, subject to review of objections by the court, this language is permissive. A district court therefore has discretion to take up the issue of costs itself in the first instance. *See BDT*, 405 F.3d at 417-19.

The parties differ concerning the allocation of the burden of proof. The answer to this controversy lies in the Judiciary Act itself. The Act requires a party seeking costs to provide an affidavit[1] attesting that each item of costs "is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." 28 U.S.C. § 1924. This clearly places on defendant the initial burden of establishing by affidavit both reasonableness and necessity. *See Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 216 (7th Cir. 1975).

---

[1] A declaration made under 28 U.S.C. § 1746 satisfies the affidavit requirement. *See, e.g., Hardwick v. Sunbelt Rentals, Inc.*, No. 09-cv-1106, 2010 WL 3270053, at * 2 (C.D. Ill. Aug. 17, 2010); *Bittakis v. El Paso*, No. EP-05-CA-402, 2007 WL 1888876, at * 2 (W.D. Tex. June 28, 2007); *Johnson v. Mortham*, 173 F.R.D. 313, 318 n.5 (N.D. Fla. 1997).

Once the prevailing party meets this burden, the burden is on the objecting party to articulate specific objections to the reasonableness or necessity of the costs sought. *BDT*, 405 F.3d at 419-20;[2] *accord, Falls v. Virginia Dep't of Transp.*, 605 F. Supp. 2d 740, 742 (E.D. Va. 2009) ("The prevailing party bears the burden of showing that the requested costs are allowed by section 1920.  Once the prevailing party makes this showing, the burden shifts to the losing party to show the impropriety of taxing these costs.") (citations omitted).

Defendant's revised request for costs, which includes some concessions and one addition, is set forth in attachment A to defendant's brief.  (docket # 648-1, ID# 9188).  I will consider plaintiffs' objections in the order in which they are presented in plaintiffs' brief (docket # 647).

## II.   Plaintiffs' Objections

### A.   Expert Witness Fees (Appendix G)

Defendant claims costs of $34,945.00 for time spent by defendant's expert witnesses in being deposed by plaintiffs' counsel, including preparation time.  The detail for this charge is set forth in Appendix G.  (docket # 641-3, ID# 8863).  Citing *L&W Supply Corp. v. Acuity*, 475 F.3d 737 (6th Cir. 2007), plaintiffs argue that expert witness fees may not be taxed as costs under Rule 54(d), because 28 U.S.C. § 1920 does not provide for them.  Although plaintiffs' argument is technically correct, it does not provide grounds for denial of the claimed fees.

---

[2] Plaintiff incorrectly asserts that the burden on the objecting party imposed by the *BDT* decision applies only when the Clerk has first taxed costs.  A reading of the *BDT* case shows that the district court, not the Clerk, assessed costs in the first instance.  405 F.3d at 417-19.  It was in this context that the Sixth Circuit imposed on the objecting party the burden of persuading the court of the impropriety of costs supported by proper affidavit.  *Id.* at 419-20.

In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987), the Supreme Court held that a prevailing party is not entitled to reimbursement for fees paid to its own expert witnesses, "absent contract or explicit statutory authority to the contrary," beyond the daily witness fee allowed by 28 U.S.C. § 1920.  482 U.S. at 439.  The *Acuity* decision relied upon by plaintiffs is a straightforward application of the *Crawford Fitting* rule and stands for the proposition that a prevailing party may not tax more than the standard $40 witness fee under Rule 54(d) for expert witnesses.  475 F.3d at 741.  The 1993 Amendments to Federal Rule of Civil Procedure 26, however, provide express authority for imposing on the interrogating party the cost of expert witness time spent preparing for and giving a deposition taken by the opponent.  Since 1993, the rule has provided that the court "must require" that a party deposing the opponent's expert witness "pay the expert a reasonable fee for time spent in responding to discovery."  FED. R. CIV. P. 26(b)(4)(E)(i).  The 1993 Amendments for the first time explicitly allowed depositions of testifying experts as a matter of course.  The Committee Comments noted, "Concerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition would ordinarily be borne by the party taking the deposition."  FED. R. CIV. P. 26 (1993 Advisory Committee comments).  The Sixth Circuit has expressly held that Rule 26(b)(4)(E) provides the "explicit statutory authority" required by *Crawford Fitting* for the recovery of that portion of the expert witness's fees that were incurred in responding to the opponent's discovery.  *Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 426-27 (6th Cir. 2001).[3]  Contrary to the argument in plaintiff's reply brief (docket # 653, ID# 9214),

_____

[3] The Sixth Circuit has noted that statutory changes to the Carmack Amendment undermine the precedential value of the *Trepel* decision with regard to the award of attorney's fees.  *See Osman v. Int'l Freight Logistics, Ltd.*, 405 F. App'x 991, 995 (6th Cir. 2011).  The court has never, however, retreated from *Trepel*'s holding on the taxability of expert witness costs, which was based on the plain language of Rule 26.

the decision of the Supreme Court in *Arlington Central School District v. Murphy*, 548 U.S. 291 (2006), in no way undermines *Trepel* or the cases on which it relies. *Arlington* holds that expert witness fees are not "reasonable attorney fees" for purposes of the fee-shifting provisions of the Individuals With Disabilities Education Act (IDEA). 548 U.S. at 300. *Arlington* does not mention Rule 26(b)(4)(E), nor does anything in the decision imply that the portion of expert fees subject to Rule 26(b)(4)(E) are not recoverable despite the plain language of the Rule.

Thus, defendant is entitled to reimbursement for part of its expert witness costs not because it was the prevailing party, but because its four expert witnesses were deposed at the request of plaintiffs. Seeking the taxation of these expert witness fees in a bill of costs is therefore technically improper. *See Native American Arts, Inc. v. Indio Products, Inc.*, No. 06 C 4690, 2012 WL 729291, at * 2 (N.D. Ill. Mar. 6, 2012). Plaintiffs argue in a footnote (Brief at 5, n.4, docket # 647, ID# 9128) that this impropriety should be deemed dispositive and that if defendant sought to invoke Rule 26, it should have done so during the pendency of the case. Plaintiffs cite no case for this proposition, and it appears to be contrary to the weight of authority. In *Trepel*, the district court had denied an application for expert witness fees contained in a bill of costs on the ground that such fees are not compensable under Rule 54(d). The Court of Appeals agreed that plaintiff was clearly not entitled to expert witness fees under Rule 54(d), but held that "this fact does not preclude him from obtaining post-judgment reimbursement for these costs" under Rule 26(b). 266 F.3d at 427. The Court of Appeals cited cases such as *Chambers v. Ingram*, 858 F.2d 351, 360-61 (7th Cir. 1988), which hold that a litigant's post-judgment request for costs under Rule 26(b) is proper, even though the costs were never requested at the time the case was pending. This comports with the general scheme of the Federal Rules, which direct that the entry of judgment should ordinarily not be delayed

-6-

for the purposes of taxing costs.  FED. R. CIV. P. 58(e).  Thus, parties are routinely allowed to seek

costs after the entry of judgment, regardless of the pendency of an appeal.  *See Baker v. First Tenn.*

*Bank Nat'l Ass'n*, No. 96-6740, 1998 WL 136560, at * 3 n.1 (6th Cir. Mar. 19, 1998) (citing

*Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 220 (7th

Cir. 1988)).

   Even those courts that expressly note the impropriety of seeking Rule 26(b)(4)(E)

expenses in a bill of costs go on to review the request on its merits.  *See, e.g., Native American Arts*,

2012 WL 729291, at * 2.  Any other result would exalt form over substance, as defendant would be

allowed to seek this expense by separate motion, apart from its bill of costs.

   Rule 26(b)(4)(E) clearly imposes upon plaintiffs the responsibility to pay for the time

spent by defense experts in preparing for and giving their depositions.  The fact that defendant

erroneously chose to request this fee in a bill of costs, as opposed to a separate motion, is not

dispositive, nor did defendant somehow forfeit its right to seek relief under Rule 26(b) by waiting

until after judgment was entered.  Plaintiffs have not objected to the reasonableness of either the

hours claimed or the hourly rate charged.  I therefore recommend that plaintiffs' objection to the

recovery of certain expert witness costs be overruled and that defendant be allowed $34,945.00 in

expert witness fees under Fed. R. Civ. P. 26(b)(4)(E).[4]

Summary for Appendix G

| | |
|---|---|
| Claimed: | $34,945.00 |
| Recommended Amount: | $34,945.00 |

---

[4] Plaintiffs assert that they have incurred similar fees from their expert witness in responding
to defendant's discovery.  Plaintiffs are free to seek reimbursement under the same authority, as the
right to reimbursement does not depend on prevailing party status.

B.     Copying Charges

The Judiciary Act allows taxation of "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  The bill of costs included $116,915.70 under this category, covering costs related both to electronically stored information and traditional photocopying charges.  Defendant has reduced its demand to $102,409.70, to account for a mathematical error.  (docket # 648-1, ID# 9188 n.2).  Plaintiffs object to this item of recovery on a number of grounds.

Plaintiffs make a general objection to the award of any copying costs on the ground that defendant was embroiled in bankruptcy court litigation involving Cyberco at the same time that it was defending the present case.  Defendant argues that all or some of the copying activity could have related to the bankruptcy case and on this basis assert that defendant has failed in its burden to demonstrate that the claimed costs were necessarily incurred in the present litigation.  Beyond hurling the accusation, plaintiffs provide no basis for the court to conclude that defendant and its counsel have submitted a fraudulent claim supported by a false affidavit.  For at least 40 years, law firms have employed sophisticated billing practices, assigning both fees and costs not merely to a client in general but to a particular matter number.  The declaration of defense counsel, Matthew Nelson, avers that the claimed costs were incurred in connection with the present litigation and that they were paid by the law firm and then billed to the client.  (Decl. ¶¶ 3, 14-30, docket # 641-4, ID#s 8865-66, 8868-72).  To sustain plaintiff's general objection, the court would be required to conclude that defense counsel is misrepresenting, under penalty of perjury, the matter to which these costs pertained.  There is no warrant for such a finding.

Beyond that, this court's own experience with this case confirms that it was a massive "document case" involving the production of voluminous records and an extensive amount of electronically stored information (ESI). At the Rule 16 scheduling conference, the parties raised a dispute concerning the form in which ESI could be produced, leading the court to enter an order requiring all ESI to be produced in native format, including all metadata directly associated with the electronic record produced. (Order, docket # 95). Early in the discovery process, plaintiffs objected to the production of documents by defendant in "TIFF" format, demanding production in native format with associated metadata. (*See* Supplemental Brief in Support of Plaintiffs' Motion to Compel, docket # 128). The record discloses extensive motion practice by which plaintiffs sought the production of further documents. (*See, e.g.,* docket #s 116, 128, 178, 184, 256). At plaintiffs' request, and over the strident objection of defendant, the court ordered an extensive electronic search of the e-mail accounts, shared network space, and laptop computers of a long list of past and present employees of defendant. (Order, docket # 164). After requiring collaboration by the parties, the court entered an order establishing a protocol for the imaging of computers and for the "key word in context" search for information to be extracted from defendant's computers and servers. (Order, docket # 197). On this record, it confounds common sense for plaintiffs to argue that the costs incurred by defendant in extracting, organizing and producing ESI were somehow related only to the bankruptcy case. Having insisted on a massive and expensive search for and production of ESI in this case, plaintiffs cannot possibly be heard to say that defendant incurred no costs in responding to plaintiffs' demands or this court's orders. I therefore conclude that plaintiffs' general objection to the awarding of any copying costs is not meritorious.

1.     Costs for Electronic Scanning, Imaging, and Maintenance of Documents (Appendix F)

Before its amendment in 2008, 28 U.S.C. § 1920(4) allowed the court to tax as costs "fees for exemplification and copies of papers necessarily obtained for use in the case." Construing this language in 2005, the Sixth Circuit held that a district court did not abuse its discretion in taxing costs "related to electronic scanning and imaging of documents," as the statutory language could be interpreted to cover this activity. *BDT*, 405 F.3d at 420. In 2008, Congress amended section 1920(4) to allow "fees for exemplification[5] and the cost of making copies of any materials." Judicial Administration & Technical Amendments Act of 2008, Pub. L. No. 110-406 § 6(2), 122 Stat. 4291 (2008). The federal courts have recognized that this amendment was specifically intended to permit taxing the costs associated with the copying of digital materials. *See, e.g., Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 165 (3d Cir. 2012); *Jardin v. DATAllegro, Inc.*, No. 08-cv-1462, 2011 WL 4835742, at * 5 (S.D. Cal. Oct. 12, 2011).

a.     Pitney Bowes

Huntington seeks to recover costs of $84,739.88, representing the expenses it incurred producing electronically stored information and producing electronic versions of paper documents. (Nelson Decl. ¶ 23, docket # 641-4, ID# 8870). These costs are summarized in Appendix F (docket

---

[5] The courts are not unanimous on the meaning of the term "exemplification" in section 1920(4). Some courts construe the term narrowly, limiting it to official transcripts of public records, authenticated as a true copy for use as evidence. *Kohus v. Costco, Inc.*, 282 F.3d 1355, 1359 (Fed. Cir. 2002) (predicting Sixth Circuit law). Other courts are more expansive, construing the term to cover acts of "illustration by example," including exhibits and demonstrative evidence. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). It is unnecessary to choose sides in this instance, because defendant does not claim costs that would fall under either definition. The expenses sought by defendant fall under the category of "making copies."

# 641-2, ID#s 8860-61, as modified by docket # 648 n.5, ID# 9177). The bulk of these expenses ($82,668.21) represent charges by Pitney Bowes Legal Services, which Huntington retained to "manage, search, and help produce electronic documents from Huntington's network files and hard drives in response to Plaintiffs' discovery requests." (Nelson Decl. ¶ 24, ID#s 8870-71). According to the Nelson declaration, Pitney Bowes processed electronically stored information, scanned more than 37,000 pages of paper documents into electronic format, provided OCR profiles for paper documents, created a database so those documents could be retrieved, processed the electronic document productions, and processed ESI identified by plaintiffs' vendor, Setec Investigations. (*Id.*). Defendant emphasizes that Pitney Bowes did not provide legal services but provided "technical services related to the management and production of electronic documents." (*Id.*).

The federal courts are split concerning the extent to which section 1920(4) allows a prevailing party to tax the totality of expenses incurred in retrieving, organizing, and producing ESI to the opponent. Some courts allow an award of all electronic discovery charges imposed by their technical vendors. *See, e.g., Jardin*, 2011 WL 4835742, at * 6; *B&B Hardware, Inc. v. Fastenal Co.*, No. 4:10-cv-317, 2011 WL 6829625, at * 5-7 (E.D. Ark. Dec. 16, 2011); *Comrie v. Ipsco, Inc.*, No. 08 CV 3060, 2010 WL 5014380, at * 5 (N.D. Ill. Dec. 1, 2010); *CBT Flint Partners, LLC v. Return Path, Inc.* 676 F. Supp. 2d 1376, 1381 (N.D. Ga. 2009), *vacated*, 654 F.3d 1353, 1361 (Fed. Cir. 2011). The *CBT Flint* case is typical. There, the district court taxed $243,000.00 in fees charged by the defendant's electronic discovery vendor to "collect, search, identify and help produce electronic documents" from the defendant's network files and hard drives in response to plaintiff's discovery requests. 676 F. Supp. 2d at 1380. The court noted that these services are "highly technical" and are not of the type that attorneys or paralegals are capable of providing. *Id.* at 1381.

Likewise, in *Comrie*, the court taxed the cost of converting, processing, and extracting information, because these functions were necessary for the production of ESI.  2010 WL 5014380, at * 5.

Earlier this year, the Third Circuit reviewed the state of authority on this issue and took a much narrower approach.  In *Race Tires America, Inc.*, the district court held that the prevailing parties were entitled to an award of all electronic discovery charges imposed by their electronic vendors in responding to the opponent's discovery requests.  The Third Circuit determined that district court decisions allowing the taxation of all, or essentially all, electronic discovery consultant charges "are untethered from the statutory mooring" of section 1920(4).  674 F.3d at 169.

> Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable.  It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional.  It does not say that activities that encourage cost savings may be taxed.  Section 1920(4) authorizes awarding only the cost of making copies.

*Id.*  The court noted that in the pre-digital era, complex litigation generally required significant preparatory work essential to the ultimate act of production of documents, including file searches, document review, and screening for privilege.  Likewise, in the digital era, preparatory work, such as imaging hard drives, performing computer searches, and converting file formats, must be performed.  "But that does not mean that the services leading up to the actual production constitute 'making copies.'"  *Id.*  The court also noted the general presumption in federal litigation that the responding party must bear the expense of complying with discovery requests.  *Id.* at * 170-71 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)).  The court concluded as follows:  "Neither the language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery -- production of ESI -- to the losing party."  674 F.3d at 171.

-12-

The Third Circuit's decision in *Race Tires America* is the only published appellate authority analyzing this issue.  The court carefully considered both sides of the question and concluded that the costs statute allows only the expense of copying, and not preparatory work, for the production of ESI.  Consequently, the court concluded that of the numerous services performed by defendant's vendor, only the scanning of hard copy documents and the conversion of native files to TIFF form (the agreed-upon format for production in that case) were compensable as copying costs.  674 F.3d at 167.  Although arguing that the weight of persuasive lower court authority supported its request, Huntington Bank was frank to acknowledge the recent Third Circuit decision to the contrary.  (Brief at 6, docket # 648, ID# 9177).  I recommend that the court adopt the approach of the Third Circuit, which is well-reasoned and is grounded in the language of section 1920(4).  This approach is also consistent, at least philosophically, with previous decisions of judges of the court, who have declined to award all costs connected with the production of ESI.  *See, e.g., Irwin Seating Co. v. IBM*, No. 1:04-cv-568, 2008 WL 1869055 (W.D. Mich. Apr. 24, 2008).

Under the *Race Tires America* approach, the only compensable costs are (a) the conversion of native digital files to the agreed-upon production format and (b) the scanning of paper documents to create digital duplicates for production in discovery.  674 F.3d at 167.  In the context of the present case, this approach renders very little of defendant's costs as taxable, because the agreed-upon format for production was the native format.  Thus, defendant's request for copying expenses connected with ESI should be limited to those costs attributable to scanning paper documents for digital production, converting data, creating the electronic production, converting certain documents to TIFF format, printing redactions, and printing exhibits for use at the Horton

deposition. Defendant calculates these costs as $2,012.95. (docket # 648, ID# 9177). Plaintiffs do not advance any cogent reason why this minimal expense should not be taxed as costs.

### b. WN&J Image Department

The last seven items on Appendix F (docket # 641-2, ID# 8861) represent charges from the electronic image department of defendant's law firm, Warner, Norcross & Judd. The first five of these (totaling $1,405.95) involve scanning or optical character recognition for the Summation database created for this case. (Nelson Decl. ¶ 29, docket # 641-4, ID# 8872). Defendants have withdrawn the last two line items. (*See* docket # 648, ID# 9178). Plaintiffs object to the award of any of these costs.

Defendant asserts that these costs are reasonable because they were "necessary in this action for the purpose of producing paper documents in electronic form and to have the documents in a form so that they could be searched" to respond to discovery. Although the second purpose is not compensable under *Race Tires America*, the first is. 674 F.3d at 167 (scanning of documents to make digital duplicates for production is generally recognized as taxable). The Sixth Circuit agrees. *BDT*, 405 F.3d at 420 (electronic scanning and imaging could be interpreted as "exemplification and copies of papers" under former version of § 1920(4)). This charge must therefore be deemed recoverable. The mere fact that the scanning also allowed for searching and other digital operations, which are not themselves taxable, does not change this result. As the *Race Tires America* court held, the process of converting documents into the agreed-upon digital format is a necessary and recoverable item of costs. Therefore, $1,405.95 should be allowed for scanning paper documents.

c.      Ikon

The only remaining item on Appendix F is a charge in the amount of $665.72 paid to a vendor named Ikon, dated August 8, 2008. (docket # 641-2, ID# 8861). Plaintiffs point out that this cost was incurred by defendant in its effort to gather court records concerning other lawsuits involving the Cyberco transactions to which plaintiffs were parties. Plaintiffs argue that such a wide-ranging foray into other lawsuits was not necessary in this case.

To be sure, both parties pursued a scorched-earth approach to discovery, and it is not surprising that defendant scrutinized the records of other lawsuits to uncover information incriminating to plaintiffs. In a free country, litigants are privileged to engage in such frenetic activity in the vain hope that it will turn up something useful. They should not suppose, however, that courts will endorse such treasure hunts when it comes time to decide which expenses were "necessarily incurred" in the litigation. In its effort to justify this and similar copying expenses, defendant does not identify the particular lawsuit for which records were recovered, nor does it attempt to justify the necessity for the expense, except to say that defendant was making sure that plaintiffs had performed "due diligence" in making their loans. It does not appear that any of these documents played any role in the otherwise voluminous summary judgment record, nor is it likely that they would have been useful at trial.

When the court allowed defendant to engage in this discovery, it did so on the premise that defendant would bear the cost of this extravagance. (*See* Transcript of Hearing dated 7/29/08, docket # 324 at 27-28, ID#s 3141-42). The discovery order specifically imposed the cost of copying on defendant. (Order ¶ F, docket # 301, ID# 3016). I see no reason to reallocate these costs. The

-15-

low threshold for discoverability under Fed. R. Civ. P. 26(b)(1) is not equivalent to the "necessity" standard of section 1920(4).  This claim should be denied.

### Summary for Appendix F

| | Claimed | Recommended Award |
|---|---|---|
| Pitney Bowes | $82,668.21 | $2,012.95 |
| WN&J | 1,405.95 | 1,405.95 |
| Ikon | 665.72 | -0- |

2.      Photocopying Expense (Appendix E)

Defendant seeks $11,494.26 in photocopy costs.  These costs are detailed in Appendix E (docket #641-1, ID# 8858) and Exhibit A (docket #648-1, ID# 9188).  Plaintiffs object to this request in its entirety.

a.      WN&J photocopies

Defendant seeks $6,797.22 for photocopies produced in the office of defense counsel Warner, Norcross & Judd.  (Appendix E, line 14).  The Nelson declaration (¶ 20, ID# 8869) discloses that this amount represents fifty percent of the actual internal copying costs incurred by defense counsel and billed to the client.  The detail for these copying costs, showing date and number of pages copied, is provided in Exhibit 7 to the bill of costs.  (docket # 643-1, ID#s 8996-9005).

Plaintiffs object on two grounds.  First, they assert that these copy charges could have been incurred in connection with the bankruptcy litigation, which also involved Cyberco.  For the same reasons stated in connection with plaintiffs' objections to the electronic copying costs, I recommend that this unsupported objection be dismissed in connection with charges for copying paper:  the charges are properly supported by an affidavit and supporting documents, and there is no

-16-

reason to suppose that the protocols employed by Warner, Norcross & Judd to associate copying charges with a particular matter are unreliable.

Plaintiffs' second objection is related.  They assert that defendants have failed in their burden to show which of the copying charges were necessarily incurred in connection with the case. Plaintiffs are correct in asserting that not all copying charges incurred in connection with litigation are taxable as costs.  Copying costs are generally limited to "copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the court's consideration." *Falor v. Livingston County, Mental Health*, No. 5:02-cv-60, 2003 WL 23220759, at * 5 (W.D. Mich. Oct. 20, 2003).  By contrast, copies obtained only for the convenience of counsel, including extra copies of filed papers and correspondence, are ordinarily not recoverable. *Irwin Seating Co.*, 2008 WL 1869055, at * 3.  The problem is that no law firm, whether large or small, can afford to make contemporaneous records concerning the nature of every photocopy made.  Plaintiffs seize upon this fortuity, arguing that the law places on the prevailing party the burden of demonstrating, presumably page by page, the taxable nature of each photocopy.  Federal courts have recognized that demanding this level of precision would make it "impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991).  Rather, the prevailing party is required to provide the best breakdown obtainable from retained records. *Id.*  In light of this practical concern, federal courts, including this court, have employed approximations to reflect the fact that some copying costs are obviously taxable while others are obviously not. *See, e.g., Summit Tech., Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1378 (Fed. Cir. 2006) (approving fifty percent reduction by district court, noting that in complex litigation "parties cannot be expected to track the identity of

-17-

each photocopied page along with a record of its relevance to the litigation."); *accord Irwin Seating Co.*, 2008 WL 1869055, at * 6 (discounting copying costs by forty percent).

Defendant does not contend that all of its copying charges are taxable. For this reason, defendant has sought an award of only fifty percent of the total copying costs. Plaintiffs argue that this concession shows the dubious nature of defendant's claim and asks that all photocopying charges be denied. Again, plaintiffs' argument flies in the face of the record and history of this case, which involved volumes of documents. The Nelson declaration discloses that defendant's summary judgment filing alone exceeded 1,000 pages (copies of which were provided on paper to both opposing counsel and the court) and that the marked exhibits filled fourteen 3-inch ring binders. Clearly, this case necessarily required the production of photocopies for numerous taxable purposes, including marking deposition exhibits, providing copies of exhibits to the deponent and counsel, copying third-party document production, and providing courtesy copies to the court. Defendant's estimate that fifty percent of the copying charges are taxable is reasonable and supported by authority. Plaintiffs' demand for further precision would require the expense of more time, money and effort than recovery of this relatively minor item justifies.

I therefore recommend that the requested internal photocopying costs in the amount of $6,797.22 be approved.

b.      Third-party copying costs

The remainder of the costs sought in Appendix E represent charges incurred by defendant in photocopying documents produced by third parties. Items 1, 2 and 3 reflect copying costs from the Kent County Circuit Court for documents in a case styled *Charter One v. Cyberco*.

These charges amount to $80.00.  The Nelson declaration (¶ 16, ID# 8868) discloses that defendant procured these  documents to establish the extent of information available to plaintiffs in the public record at the time plaintiffs were contracting with Cyberco.  This inquiry was clearly relevant to the issues framed in this case, as plaintiffs alleged they were the victims of fraud.

Items 4 through 6 reflect the costs of obtaining copies of UCC financing statements from the State of Michigan.  In Appendix E (docket # 641-1, ID# 8858 n.3), defendant asserts that processing charges have already been excluded, leaving only copying costs amounting to $1,766.00.  Plaintiffs oppose taxation of these copying charges, on the ground that plaintiffs were not required to search UCC filings when they advanced their loans, because they were purchase money security lenders.  This argument is beside the point.  Part of Cyberco's fraud involved placing security interests on the same fictitious computer equipment, which was identified by serial number.  In performing an appropriate investigation in this case, any defendant should be entitled to reconstruct the history of events that plaintiffs claim were fraudulent.  Although investigation costs are not taxable, the cost of copying the documentary fruits of that investigation is taxable.  A reconstruction of the public record documenting the giving of security interests in nonexistent computer equipment was central to the claims being litigated in this case.  Defendant is therefore entitled to recover the claimed $1,766.00 expended in copying Cyberco's UCC financing statements.

Item 12 of Appendix E seeks $225.16 in copying charges paid to iVIZE, a copy company.  (docket # 641-1, ID# 8858).  These charges were incurred for copying of documents used in connection with depositions (Nelson Decl. ¶ 19, ID# 8869) and are therefore taxable.

Line 13 of Appendix E reflects a $463.44 charge from iVIZE.  This charge represents the cost of copying transcripts from El Camino's litigation against third parties, including its insurer.

(Nelson Decl. ¶ 19, ID# 8869).  The charges itemized on lines 9 and 11, amounting to $1,509.00,

also relate to reproduction of court records for other litigation involving Cyberco to which plaintiffs

were parties.  In its response brief (docket # 648-1, ID# 9188), defendant claims an additional

$454.93 for copying documents related to E-Plus's litigation with its insurance company.  I have

already determined that defendant's investigation of other lawsuits to which plaintiffs were parties

may have been justifiable in its passion for thoroughness, but does not result in any taxable costs.

The costs sought in Appendix E, lines 9, 11 and 13, and Exhibit A to defendant's brief -- totaling

$2,427.37 -- should therefore be denied.

Items 7, 8 and 10 amounting to $198.50, represent the costs for copying subpoenaed

documents from banks.  Plaintiffs do not appear to object to this copying cost, which should be

allowed.

### Summary for Appendix E

|  | Claimed | Recommended Award |
|---|---|---|
| Charter Case (lines 1-3) | $      80.00 | $      80.00 |
| UCC (lines 4-6) | 1,766.00 | 1,766.00 |
| Bank docs (lines 7, 8, 10) | 198.50 | 198.50 |
| Other Litigation (lines 9, 11, 13, and Exhibit A) | 2,427.37 | -0- |
| Deposition Exhibits (line 12) | 225.16 | 225.16 |
| WN&J (line 14) | 6,797.22 | 6,797.22 |
|  | $ 11,494.25 | $ 9,066.88 |

C.    Fees for Private Process Servers (Appendix A)

Defendant seeks $630.00 for expenses of private process servers, who served

documents subpoenas on banks.  Appendix A (docket # 640-2, ID# 8848) details the name of the

process server, the bank served, the date of service, and other relevant information. Defendant does not seek the actual cost, but only $45.00 per subpoena, the rate then applicable for compensating the United States Marshal Service under 28 C.F.R. § 0.114(a)(3) (2008). Plaintiffs object, arguing both that the fees of private process servers are not legally taxable and that all of the subpoenas were unnecessary, except for a subpoena addressed to Thomas Howard.

Plaintiffs' legal objection to the ability of a prevailing party to seek costs for private process servers is unavailing. In *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199 (6th Cir. 2002), the Sixth Circuit joined a majority of circuit courts in holding that the taxing of private process server fees is allowable under 28 U.S.C. § 1920(1), as long as the fee does not exceed that which would have been charged by the United States Marshal. 33 F. App'x at 202-03 (collecting cases). "We adopt this persuasive reasoning and hold that a district court may tax costs for private process server fees to the extent that these private process server fees do not exceed the United States Marshal's fees." *Id.* at 203. For the contrary view, plaintiffs rely on *Pion v. Liberty Dairy Co.*, 922 F. Supp. 48, 53 (W.D. Mich. 1996), a case that predates *Arrambide* by six years. They also rely on *Halliburton Co. v. Ward*, No. 06-45-C, 2007 WL 2702214 (W.D. Ky. Sept. 12, 2007). The *Halliburton* court noted the unpublished Sixth Circuit case and the published out-of-circuit authority on which the Sixth Circuit relied, but found a "minority position" more persuasive. The court determined, however, that resolution of this legal issue was not necessary, because taxation of the requested cost was not appropriate in the circumstances of the case. *Halliburton* is therefore not precedential. In any event, the safe course is to follow the decisions of the Sixth Circuit, even if unpublished, in the absence of controlling authority.

Plaintiffs' factual objection is likewise unavailing.  The Nelson declaration (¶ 6, ID# 8866) discloses that defendant issued the subpoenas to gather information concerning plaintiffs' reasonable reliance on representations made by Cyberco, as well as issues of damages and the tracing of deposits.  The subpoenas were issued in this case, not the bankruptcy case.  This charge is properly documented, and the issues to which the subpoenas pertained were clearly relevant to this case.  I therefore recommend that the subpoena fees be allowed in their entirety.

D.   <u>Transcript Fees (Appendices B and C)</u>

The Judiciary Act allows taxation of fees for "printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  Defendant's bill of costs seeks an award of $44,894.90 for transcript fees, including both court transcripts and deposition transcripts.  (docket # 640-3, 4, ID#s 8850-53).  Plaintiffs object in part to the award of transcript costs.

Appendix C to the bill of costs lists eleven transcripts of trial court proceedings, including transcripts of the Rule 16 scheduling conference, transcripts of six discovery hearings, the summary judgment transcript, and a hearing on a pre-motion conference before Judge Neff, all of which occurred in this case.  In addition, defendant seeks to tax the cost of the transcripts of the plea and sentencing of James Horton in a criminal prosecution in this court (case no. 1:06-cr-87).  The total sought for trial court transcripts is $1,724.75.  (docket # 640-4, ID# 8853).

With regard to both trial transcripts and deposition transcripts, the standard for taxability is whether the cost of taking and transcribing the event was "reasonably necessary" for purposes of litigation.  *See Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989).  Necessity is

determined as of the time of the deposition or hearing. *Id.* at 120.  Many courts draw a distinction between transcripts "necessarily obtained for use in the case" and those procured merely for the "convenience of counsel."  *See, e.g., Irwin Seating Co.*, 2008 WL 1869055, at * 5 (Bell, J.). Discerning between the two is not always easy and depends on the particular facts of the case.

As a general rule, assessment of costs for pretrial transcripts is authorized under section 1920(2).  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997).  No bright line test exists for determining whether a transcript is "necessary" or merely "convenient," and the mere fact that no testimony was taken is not automatically dispositive.  Especially in complex cases, courts allow recovery of costs for transcripts of nondispositive pretrial hearings, if the hearings limit or clarify the issues in the case.  *See, e.g., Movitz v. First Nat'l Bank of Chicago*, 982 F. Supp. 571, 575 (N.D. Ill. 1997).  In the circumstances of the present case, I find that all of the transcripts procured by defendant were reasonably necessary to this litigation.  Although a good argument can be made in a simple case that the transcripts of discovery hearings should not be taxable, this was not a simple case.  From the very first Rule 16 conference, the parties and the court were forced to address complex issues regarding electronic discovery.  The representations and statements of counsel on this subject were detailed, and the court was not always able to capture every detail in subsequent orders.  Consequently, it is reasonable that counsel would want a transcript of the proceedings, both to assure that the subsequent order accurately reflected the court's ruling and to facilitate compliance.  The same analysis applies to the transcripts of pre-motion hearings before Judge Neff, as those hearings are designed to clarify and narrow the issues.  Judge Neff often provides guidance to the parties concerning the scope of motion practice, and any careful lawyer would be well advised to obtain a transcript.  A transcript of the summary judgment hearing is

-23-

undoubtedly taxable, as the summary judgment is now on appeal to the Sixth Circuit. If defendant had not procured this transcript, plaintiffs probably would have for purposes of appeal.

Finally, the minimal cost for the transcript of the plea and sentencing in *United States v. Horton* is clearly taxable. Mr. Horton was a central player in the Cyberco fraud and his deposition was relied on by both parties in the summary judgment proceedings. Courts routinely tax the cost of obtaining criminal transcripts as part of a related civil case. *See, e.g., Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 867 (7th Cir. 1981).

In Appendix B to the bill of costs, defendants itemize transcript costs for 52 depositions, amounting to $43,170.15. (docket # 640-3, ID#s 8850-51). Plaintiffs do not object to the taxation of costs for deposition transcripts in general, but they do object to allegedly excess costs contained in the request. The judges of this court generally decline to tax charges for additional services from court reporters procured by attorneys in connection with depositions. Such additional charges include computer disk copies, mini transcripts, key word indices, and rough drafts. *See, e.g., Irwin Seating Co.*, 2008 WL 1869055, at * 4. Nevertheless, the Sixth Circuit has held that taxation of such additional charges is not an abuse of the trial court's discretion. *BDT*, 405 F.3d at 419. Again, discerning the difference between reasonably necessary charges and those incurred only for the convenience of counsel depends on the nature of the case and the course of the proceedings in the district court.

In response to plaintiff's objections, defendant has reduced its request for deposition transcript costs from $43,170.15 to $40,071.65. (Brief at 14-15, docket # 648, ID#s 9185-86). The reductions cover certain shipping costs, costs related to the Djinis deposition, and costs associated with ASCII files, rough drafts, a condensed transcript, e-transcripts, and real-time tracking. (*Id.*).

Defendant has met the substance of plaintiffs' valid objections. Defendant is entitled to recover reasonable deposition transcript costs in this case, which involved massive discovery.

Summary for Appendices B and C

|  | Claimed | Recommended Award |
|---|---|---|
| Court transcripts | $  1,724.75 | $  1,724.75 |
| Deposition transcripts | 43,170.15 | 40,071.65 |

E.     Witness Fees - Appendix D

Appendix D to the bill of costs (docket # 640-5, ID# 8855) lists $680.00 in witness fees, to which plaintiffs have objected to all but $80.00. In response, defendant agreed to reduce its request to $80.00, conceding that the fees incurred in connection with document-only depositions are better categorized as copying costs under section 1920(4). (docket # 648, ID# 9186).

Summary for Appendix D

| Claimed | Recommended Award |
|---|---|
| $680.00 | $80.00 |

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiffs' motion to disallow costs (docket # 644) be granted in part and denied in part. Defendant should be awarded a judgment for costs in the total amount of $89,962.18, itemized as follows:

| Item of Costs | Amount Claimed in Bill of Costs | Amount Conceded by Plaintiffs | Defendant's Revised Request per Ex A (ID# 9188) | Recommended Award |
|---|---|---|---|---|
| Subpoena Fees (App A) | $630.00 | $45.00 | $630.00 | $630.00 |
| Transcript Costs: Hearings (App C) Depositions (App B) | $1,724.75 $43,170.15 | $0.00 $31,981.15 | $1,724.75 $40,071.65 | $1,724.75 $40,071.65 |
| Witness Fees (App D) | $680.00 | $80.00 | $80.00 | $80.00 |
| Copying: ESI (App F) Photocopies (App E) | *$91,370.27 $11,039.33 | $0.00 $0.00 | $84,739.88 $11,494.25 | $3,418.90 $9,066.88 |
| Expert Discovery Costs (App G) | $34,945.00 | $160.00 | $34,945.00 | $34,945.00 |
| Fees of Clerk | $25.00 | $25.00 | $25.00 | $25.00 |
| | * $183,584.50 | $32,291.15 | $173,710.53 | $89,962.18 |

* Reflects subtraction of $14,506.10 for mathematical error in original bill of costs.


Dated:   May 3, 2012                    /s/  Joseph G. Scoville
                                        United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).

-26-